Constance E. Brooks (*pro hac vice*)
cbrooks@fwlaw.com
Danielle Bettencourt (WY Bar No. 8-6782)
dbettencourt@fwlaw.com
FAIRFIELD & WOODS, P.C.
1801 California Street, Suite 2600
Denver CO 80202-2645
P: (303) 894-4431 F: (303) 830-1033

Counsel for Petitioner

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| FRIENDS OF ANIMALS, a 501(c)(3) organization,<br><br>    Plaintiff,<br><br>v.<br><br>DEB HAALAND, et al.<br><br>    Defendants. | Consolidated Civil Action Nos. 23-CV-84, 23-CV-87, and 23-CV-117-F<br><br>PETITIONER ROCK SPRINGS GRAZING ASSOCIATION'S CONSOLIDATED REPLY IN RESPONSE TO FEDERAL RESPONDENTS' AND INTERVENOR-RESPONDENTS' OPPOSITIONS TO PETITIONER'S MOTION TO CONSOLIDATE |

Petitioner, the Rock Springs Grazing Association (RSGA), submits this Consolidated Reply to the Respondents U.S. Department of the Interior, *et al.*'s (DOI), Intervenor-Respondents American Wild Horse Campaign, *et al.*'s (AWHC), and Intervenor-Respondents Return to Freedom, *et al.*'s (RTF) (collectively Respondents) Oppositions to RSGA's Motion to Consolidate this matter with the petition and complaints filed in *American Wild Horse Campaign, et al. v. Stone-Manning*, Case No. 2:23-CV-0084 NDF; *Return to Freedom v. Dept. of the Interior*, Case No. 2:23-CV-0087 NDF; and *Friends of Animals v. Haaland*, Case No. 2:23-CV-0117 NDF.

The Respondents all argue that consolidation of the four cases is inappropriate because the questions of law, fact and claim for relief are different, the administrative records do not significantly overlap, and consolidation would cause unnecessary confusion and delay. ECF No. 35 at 1, 3-9; ECF No. 36 at 2, 6-10; ECF No. 37 at 2, 4-10. Respondents all fail to recognize that the common questions of law or fact do not have to predominate, but rather only need to exist and consolidation determined to be beneficial. *Bravos v. U.S. Bureau of Land Mgmt.*, 2009 WL 10664475, at *3 (D. N.M. Aug. 19, 2009) ("Under Rule 42(a), the Court need only find a 'common question of law or fact" in order to trigger the balancing portion of the analysis…"); *see Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 394 (E.D. Wis. 2008). The cases before this Court involve the common question of law regarding the proper management of wild horses on the Wyoming Checkerboard pursuant to Sections 3 and 4 of the Wild Free-Roaming Horse and Burros Act (WHA), 16 U.S.C. §§ 1333, 1334. In addition, both the BLM's purpose for issuing the Record of Decision and Approved Resource Management Plan Amendment for the BLM Rock Springs and Rawlins Field Offices (Wild Horse ROD), and RSGA's basis for its current litigation, arise from the 2013 Consent Decree to resolve RSGA's rights under Section 4 of the WHA to request removal of wild horses from its land and to

revoke its previous consent to support wild horses on its land. The Wyoming Checkerboard ensures that land management must consider public and private lands, a fact the Respondents notably omit.

In opposing consolidation, Respondents focus on the fact that RSGA seeks relief for agency failure to act under Section 706(2) of the Administrative Procedure Act (APA), while AWHC and RTF challenge final agency action under Section 706(1). ECF No. 35 at 4-5; ECF No. 36 at 7-8; ECF No. 37 at 5-7. The difference in the legal remedy does not change the legal question of whether the agency actions managing wild horses conform to Sections 3 and 4 of the WHA. Both cases involve the same time period, the same land area, and even the same parties.

AWHC and RTF both claim that the BLM's Wild Horse ROD violated Section 3 of the WHA by zeroing out wild horse populations and decreasing the herd management areas (HMAs) on public lands based on "legally irrelevant" factors. *American Wild Horse Campaign*, ECF No. 1, ¶¶ 83-87; *Return to Freedom*, ECF No. 1 ¶¶ 129-130. The Friends of Animals specifically claim that BLM violated the WHA "by issuing a Decision to establish appropriate management levels and zero out wild horses on public lands based upon the <u>interest of private landowners, alleged management difficulties, the 2013 Consent Decree, and a desire to prevent wild horses from straying onto private lands</u>." *Friends of Animals*, ECF No. 1, ¶ 144. The AWHC's, RTF's, and the Friends of Animals' claims of WHA violations center on BLM's obligations under both Sections 3 and 4 of the WHA. RSGA's claim and request for mandamus, also centers on BLM's legal obligations under Section 4 of the WHA and RSGA's right to not consent to wild horses remaining on private land or having its private lands included within an HMA boundary. ECF No. 20 at ¶¶ 69-90. The additional claims brought under the three Wild Horse ROD cases claiming National Environmental Policy Act (NEPA) and Federal Land Management and Policy Act (FLPMA) violations do not negate the common legal questions in the Wild Horse ROD cases and RSGA's case involving BLM's obligations under the

WHA.

The Respondents also argue that the differences in the relief sought show that there are no common questions of law and consolidation is inappropriate. ECF No. 35 at 6; ECF No. 36 at 7-8; ECF No. 37 at 6-7. AWHC states that even if RSGA obtains its requested relief, it will have "no bearing" on whether the BLM complied with the WHA when it decided to eliminate HMAs. ECF No. 37 at 7. AWHC fails to acknowledge that a decision by this Court to vacate and/or remand the BLM's Wild Horse ROD will preclude RSGA's request to have wild horses removed from its private lands and its private lands removed from wild horse management. The remedy sought by AWHC and RTF will force RSGA to continue to maintain unlimited wild horses on its land notwithstanding the clear language of the WHA that recognizes the right of a landowner to decline to support wild horses. If the Court grants the relief sought by AWHC and RTF, then RSGA's private lands will continue to be included within HMA boundaries and managed for wild horses regardless of RSGA's revocation of consent. DOI admits that how this Court decides the three Wild Horse ROD cases "could complicate the [BLM's] response to [RSGA's] demand to remove wild horses." ECF No. 35 at 7; *see also id.* at 8 ("[I]f the Court were to vacate the [ROD], the number of wild horses removed from Petitioner's lands *would probably be less in the short term*, as the previous resource management plans . . . generally specifies higher population objectives."). BLM previously admitted to RSGA that BLM anticipated litigation and would not implement the Wild Horse ROD until the litigation is resolved. ECF No. 20 at ¶¶ 5, 54.

RTF further claims there are no common questions of fact (ECF No. 36 at 6-7), while DOI and AWHC claim that the administrative records are too different and distinct to allow for consolidation (ECF No. 35 at ; ECF No. 37 at 7-8). Relying on *Habitat Education Center*, AWHC claims that only those cases with administrative records that "contain identical facts" will support

consolidation on the basis of a common question of fact. ECF No. 27 at 8 (*citing Habitat Educ. Ctr., Inc.*, 250 F.R.D. at 395). But completely identical facts are not required and there only needs to be a common question of law or fact. *Bravos v. U.S. Bureau of Land Mgmt.*, 2009 WL 10664475, at *3; *see Habitat Educ. Ctr., Inc.*, 250 F.R.D. at 395 (Court found common questions of law and fact between two administrative records, and only denied consolidation when balancing the benefits and costs). As addressed in RSGA's memorandum in support of the motion to consolidate (ECF No. 30 at 3-4) and acknowledged by DOI (ECF No. 35 at 7-8), there are clearly common questions of fact between RSGA's litigation and the three Wild Horse ROD cases.

Without an administrative record index, it is entirely speculative how the records may differ. The fact that the cases involve the same program, the same time period, and the same land area makes it probable that the administrative records will be very similar. The administrative records will involve BLM's management of wild horses from October 2013 to May 2023 within the Wyoming Checkerboard in the Rock Springs Field Office. Even the resource analysis under NEPA should include the same documents because BLM wrote three environmental assessments for wild horse gathers while it wrote the environmental impact statement as part of the land use plan revisions all addressing the same land area for wild horse management.

The common question of fact involves the 2013 Consent Decree and RSGA's revocation of consent to allow wild horses on their private lands within the Wyoming Checkerboard. This includes not only RSGA's right to request the BLM to remove wild horses from its private lands, but the right to have its lands excluded from the previous HMA boundaries. While DOI claims these are two distinct inquiries (*see* ECF No. 35 at 8), they are both based on RSGA's Section 4 rights under the WHA to require removal of wild horses from its private land. The Wild Horse ROD and Plan revisions arose solely from the 2013 Consent Decree, which resolved RSGA's revocation of consent

to leave wild horses on its private land. While the Wild Horse ROD administrative record may be broader to include the protests and comments, the environmental analysis is similar to what BLM used for the wild horse gathers implementing the 2013 Consent Decree. These same documents would be included with the administrative record for RSGA's claim. Both administrative records may include additional documents and factual information, but this does prevent consolidation.

AWHC and RTF claim prejudice due to delay and possibility BLM will institute a gather, necessitating an injunction. ECF No. 36 at 9-10; ECF No. 37 at 9-10. They also suggest RSGA could seek discovery for its mandamus claim. ECF No. 36 at 10; ECF No. 37 at 9. Both are flawed. Due to the identical time periods, land area, and BLM program, any confusion in the record is minimal and unlikely. BLM has indicated it will not implement gathers even in the face of unprecedented wild horse numbers in protected Greater sage grouse habitat. Finally, under the *Olenhouse* doctrine and local rules, review of agency action is processed as an appeal and limited to the agency record. U.S.D.C.L.R. 83.6; *Olenhouse v. Commodity Credit Corp.* 42 F.3d 1560, 1580 (10th Cir. 1994).

The Respondents all state RSGA need only intervene. Intervenors are not full parties to the litigation. If this Court declines consolidation, the three actions should be dismissed for failure to join RSGA as a required party under Fed. R. Civ. P. 19(a). The three cases directly attack the 2013 Consent Decree and RSGA's Section 4 rights to have wild horses removed from its land, which is the basis for the Wild Horse ROD. Failure to include RSGA as a party is per se prejudicial and unjust.

RSGA believes consolidation offers a fair and efficient path to manage these cases. The common questions of fact and law, along with the overlap of legal interests support consolidation.

Respectfully submitted,

/s/ Constance E. Brooks
Constance E. Brooks (*pro hac vice*)
cbrooks@fwlaw.com
Danielle Bettencourt (WY Bar No. 8-6782)
dbettencourt@fwlaw.com
FAIRFIELD & WOODS, P.C.
1801 California Street, Suite 2600
Denver CO 80202-2645
P: (303) 894-4431 F: (303) 830-1033

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2023, I electronically filed the foregoing PETITIONER ROCK SPRINGS GRAZING ASSOCIATION'S CONSOLIDATED REPLY IN RESPONSE TO FEDERAL RESPONDENTS' AND INTERVENOR-RESPONDENTS' OPPOSITIONS TO PETITIONER'S MOTION TO CONSOLIDATE with the Clerk of the Court using the CM/ECF system and for the cases of *American Wild Horse Campaign, et al. v. Stone-Manning, et al.*, Case No. 2:23-CV-0084 NDF; *Return to Freedom v. Dept. of the Interior, et al.*, Case No. 2:23-CV-0087 NDF; and *Friends of Animals v. Haaland*, Case No. 2:23-CV-0117 NDF which will send notification of this filing to all counsel of record.

/s/ Constance E. Brooks
CONSTANCE E. BROOKS