William S. Eubanks II
(*Admitted pro hac vice*)
Eubanks & Associates, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (970) 703-6060
bill@eubankslegal.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| AMERICAN WILD HORSE CAMPAIGN, et al.,    ) | |
|       ) | |
| *Petitioners*,    ) | |
|       ) | |
| v.    ) | Civ. No. 2:23-cv-00084-KHR |
|       ) | |
| TRACY STONE-MANNING, et al.,    ) | |
|       ) | |
| *Respondents*.    ) | |

**PETITIONERS' COMBINED RESPONSE TO ORDER
REQUESTING ADDITIONAL BRIEFING**

On June 13, 2024, the American Wild Horse Campaign ("AWHC") Petitioners notified

the Court of a "scoping statement" issued by the Bureau of Land Management ("BLM") on June

7, 2024, which initiated that agency's decision-making process under the Wild Free-Roaming

Horses and Burros Act ("Wild Horse Act") and the National Environmental Policy Act

("NEPA") to remove excess horses from the Great Divide Basin, Salt Wells Creek, and Adobe

Town Herd Management Areas ("HMAs") as soon as October 1, 2024. *See* ECF No. 63 & 63-1.

On June 18, 2024, the Court issued an Order requesting additional briefing by the parties on: (1)

"whether [BLM's] scoping statement constitutes a final agency action for the purposes of the

underlying action"; and (2) "what impacts, if any, do these recent actions have upon the parties'

respective arguments." ECF No. 64. The AWHC Petitioners, joined by the Return to Freedom

Petitioners and Petitioner Friends of Animals ("Petitioners," collectively), file this joint response to address the Court's questions.

*The Scoping Statement is Not a Final Agency Action.*

BLM's scoping statement is not a final agency action because it neither marks the consummation of BLM's decision-making process for how and when it will gather and remove horses from the public range (or the NEPA process for that decision) nor is it an action from which rights or obligations have been determined. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Rather, the scoping statement merely advises the public that BLM will receive feedback on the scope of the NEPA process for its proposed roundup and removal action before issuing a final decision, which is legally and practically distinct from the separate final agency action challenged in this case. *See* 40 C.F.R. § 1501.9(a) (describing how scoping is an "early" stage of the decision-making process to identify the scope of a particular NEPA process).

Although there is not yet a final action related to the scoping statement BLM recently published, the proposed removal identified therein is directly related to, and the undeniable result of, the final agency action challenged in this litigation. Petitioners challenge BLM's Record of Decision ("ROD") and Amended Resource Management Plans ("RMPs") that converted the Great Divide Basin, Salt Wells Creek, and a significant portion of the Adobe Town HMAs to a Herd Area ("HA") designation, thus allowing for zero wild horses to inhabit these public lands where they were formerly protected for more than five decades by the Wild Horse Act. It is undisputed that the ROD and RMP Amendments constitute final agency action and mark the agency's final decision to no longer manage wild horses on these vast areas of public lands, thus requiring the permanent removal of all wild horses from these areas. Indeed, the ROD for the

challenged RMP Amendments states unequivocally that "*[t]his decision will permanently remove wild horses*" from these HMAs. RMPA-001677 (emphasis added).

*The Scoping Statement Reinforces the Justiciability of Petitioners' Claims Here and Undermines Respondents' Arguments.*

BLM's scoping statement does not impact Petitioners' justiciability or merits arguments, apart from further underscoring why this case is patently ripe for adjudication and Petitioners' injuries are more imminent than at the time of the parties' prior briefing. Petitioners already emphatically objected to Federal Respondents' attempt to avoid judicial review of BLM's ROD on the flimsy basis of ripeness and standing, neither of which is supported by controlling authority or the reality on the ground in these former HMAs. *See* ECF No. 61 at 2-11; ECF No. 62 at 7-13; ECF No. 67 at 2-12. That BLM has initiated a new decision-making process when there is pending litigation over the very decision BLM says in the scoping statement it is now bound to execute by permanently removing every horse from these public lands, undercuts Federal Respondents' justiciability arguments and highlights the need for prompt judicial resolution of these issues before BLM takes actions that are difficult for the Court to reverse if Petitioners are correct on the merits.

The scoping statement conflicts with Federal Respondents' contentions that claims against the ROD and RMP Amendments are "premature," and that BLM "would make an excess determination" in a subsequent gather plan. *See* ECF No. 54 at 23, 35. The scoping statement confirms that BLM will not make an excess determination as part of a future decision-making process. By its own admission, BLM has already "determined" that horses are excess *because* the RMP Amendments mandate permanent removal of all wild horses, totaling almost 5,000, until the new appropriate management level ("AML") of zero is achieved. ECF No. 63-1 at 1.

Importantly, BLM's subsequent decision will not—indeed *cannot*—depart from the RMP-level decisions challenged in these consolidated cases. The scoping statement itself confirms as much, with BLM conceding that the ROD challenged in these cases compels BLM to subsequently remove *all* wild horses as "excess animals." *See* ECF No. 63-1 at 1. The legally binding determinations BLM made in its ROD and RMP Amendments—i.e., arbitrarily stripping these areas of their decades-long HMA status and reducing their wild horse AMLs to zero— cannot, under applicable law, be changed in a removal decision that merely implements an RMP. *See* RMPA-049421 (BLM guidance, providing that "[d]ecisions to . . . remove all or a portion of an area's designation as an HMA must be made through [the RMP] Amendment" process).

Relying on BLM's long-standing interpretation, courts have uniformly held that such decisions *must* be made in RMP amendments (such as those challenged here), rather than in removal decisions implementing the directives contained in an RMP. *See In Def. of Animals v. U.S. Dep't of Interior*, 909 F. Supp. 2d 1178, 1192 (D. Nev. 2012) (rejecting arguments as to "the multi-use parameters for the HMA" because "such a change cannot be made within the confines of this [wild horse removal] action," and noting that otherwise it "would amount to an end-run around the proper procedures for effectuating revisions to the applicable RMP" where "range use is allocated"), *aff'd* 751 F.3d 1054 (9th Cir. 2013); *Am. Wild Horse Campaign v. Bernhardt*, 442 F. Supp. 3d 127, 138 (D.D.C. 2020) (finding that the land use plan decision to convert an HMA to an HA and manage for zero wild horses is the "key determination" for judicial review, not a subsequent gather plan), *aff'd* 850 Fed. App'x 14 (D.C. Cir. 2021). In short, this case is ripe and a hypothetical challenge to the forthcoming removal decision announced in BLM's scoping statement would *not* provide an avenue for the relief Petitioners

properly seek in this case or aid the Court in resolving Petitioners' claims challenging decisions that BLM made exclusively in the ROD and RMP Amendments at issue here.

This case is ripe for adjudication now. Petitioners have Article III standing. And, BLM's scoping statement only amplifies the need for timely relief to avoid severe, irreparable harm to Petitioners' interests before BLM begins in three months permanently removing almost 5,000 federally protected wild horses from public lands where they have roamed since long before Congress unanimously passed the Wild Horse Act in 1971.

Respectfully submitted,

/s/ William S. Eubanks II
William S. Eubanks II (*pro hac vice*)
bill@eubankslegal.com

Matthew R. Arnold (*pro hac vice*)
(*Admitted pro hac vice*)

EUBANKS & ASSOCIATES, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (970) 703-6060

Leah Schwartz
Wyo. Bar. No. 7-5019
Parsons Behle & Latimer
20 E. Simpson Avenue
Jackson, WY 83001
(307) 733-5130
leah@parsonsbehle.com

*Counsel for the AWHC Petitioners*

/s/ Jennifer Best
Jennifer Best (*pro hac vice*)
jennifer@friendsofanimals.org

Robert Huss (*pro hac vice*)
rhuss@friendsofanimals.org

Friends of Animals, Wildlife Law Program
7500 E. Arapahoe Road, Suite 385
Centennial, Colorado 80112
(720) 949-7791

Brittany Thorpe
Wyo Bar No. 7-6490
Domonkos & Thorpe, LLC
1914 Logan Ave.
Cheyenne, WY 82001
(307) 426-5015
Brittany@dandt.llc

*Counsel for Petitioner Friends of Animals*


*/s/ Stephenson D. Emery*
Stephenson D Emery
WSB #5-2321
WILLIAMS PORTER DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P O Box 10700
Casper, WY 82602
Tel: 307.265.0700
Fax: 307.266-2306
Email: semery@wpdn.net

Bruce A. Wagman
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Tel: 415.275.8540
Fax: 415.275.8551
Email: bwagman@rshc-law.com


*Counsel for RTF/FRER Petitioners*