TODD KIM
Assistant Attorney General
MAGGIE B. SMITH (WA Bar No. 45628)
KIMBERLY CULLEN (DC Bar No. 888314618)
Trial Attorneys
U.S. Department of Justice
Environment & Natural Resources Division
7600 Sand Point Way, NE
Seattle, WA 98155
Telephone: 202-598-3088/ Fax: 202-305-0275
Email: maggie.smith@usdoj.gov


ERIC J. HEIMANN
Acting United States Attorney
C. LEVI MARTIN (WY Bar No. 6-3781)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003
Telephone: 307-772-2124
Email: christopher.martin@usdoj.gov

*Attorneys for Respondents*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| AMERICAN WILD HORSE CAMPAIGN, et al., <br><br> Petitioners, <br><br> v. <br><br> TRACY STONE-MANNING, et al., <br><br> Respondents, <br><br> and <br><br> STATE OF WYOMING, <br><br> Intervenor, <br><br> and <br><br> ROCK SPRINGS GRAZING ASSOCIATION, <br><br> Intervenor. | Civil Nos. 2:23-cv-84-KHR (Lead); 2:23-cv-87-KHR (Joined); 2:23-cv-117-KHR (Joined) |

| | |
|---|---|
| RETURN TO FREEDOM, et al.,<br><br>     Petitioners,<br><br>  v.<br><br>DEB HAALAND, et al.,<br><br>     Respondents. | |
| FRIENDS OF ANIMALS,<br><br>     Petitioner,<br><br>  v.<br><br>DEB HAALAND, et al.,<br><br>     Respondents. | |

**RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY**

Petitioners provided notice of *Loper Bright Enterprises v. Raimondo*, S. Ct. No. 22-451, 2024 WL 3208360 (June 28, 2024) ("*Loper Bright*") as a supplemental authority. ECF No. 74. *Loper Bright* overruled the holding of *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ("*Chevron*") that courts should defer to agency interpretations of ambiguous statutes in certain circumstances. Petitioners' representations regarding the import of this ruling on this case, however, are overstated. While Federal Respondents cited Tenth Circuit precedent that quotes *Chevron* once in their merits response brief, the statutory interpretation offered by the Federal Respondents is fully consistent with the Supreme Court's holding in *Loper Bright*.

In the standard of review section of Federal Respondents' merits response brief, we cited a Tenth Circuit case that quoted *Chevron*. *See* Federal Respondents' Merits Response Brief (ECF No. 54) at 30[1] (stating "[i]f the Court cannot readily divine Congress' clear intent, it defers to the agency's interpretation of the statute so long as it is 'based on a permissible construction of the

---

[1] The page numbers refer to the ECF-generated pagination in the upper right corner.

statute.'") (quoting *Ausmus v. Perdue*, 908 F.3d 1248, 1253 (10th Cir. 2018), and noting that case quotes *Chevron*). This citation merely acknowledged the long-established, but no longer applicable, framework for reviewing disputes over an agency's interpretation of a statue it is charged by Congress to administer.

By citing this case Federal Respondents did not argue that the Bureau of Land Management ("BLM") was entitled to *Chevron* deference in its interpretation of the Wild Free-Roaming Horses and Burros Act of 1971 ("Wild Horses Act"). Instead, Federal Defendants argued only that BLM's interpretation was the best reading of that statute because it harmonizes Sections 3 and 4 of the Wild Horses Act. ECF No. 54 at 35-41. To be sure, Federal Respondents argued that BLM's long-held and consistent interpretation of the Wild Horses Act should be afforded weight.[2] ECF No. 54 at 41-43. But affording an agency's consistent statutory interpretation weight remains good law. *Loper Bright*, 2024 WL 3208360, at *9 ("That is because 'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of 'what the law is.'") (citation omitted).

Petitioners' notice, rather than simply explaining the import of *Loper Bright*, provides a rehashing of their substantive statutory interpretation arguments. ECF No. 74 at 3-4. Petitioners purport to offer "a plain language reading" of the Wild Horses Act, but in doing so reveal that their arguments are anything but. For example, Petitioners argue that "Congress left no discretion

---

[2] Federal Defendants did argue that BLM's factual determinations are to be reviewed using the Administrative Procedure Act ("APA") "arbitrary and capricious" standard, under which courts start with a presumption of regularity and afford deferential weight to technical or scientific matters within the agency's area of expertise. ECF No. 54 at 43-45; *see Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014). But the deferential review standard of APA Section 706 remains good law. *Loper Bright*, 2024 WL 3208360, at*12 ("Section 706 does mandate that judicial review of agency policymaking and factfinding be deferential.") (citing 5 U.S.C. § 706(2)(A)).

for BLM to eliminate [Herd Management Areas ("HMAs")]," ECF No. 74 at 4, but HMAs do not appear in the statute and instead are a regulatory creation. *See* ECF No. 54 at 16-17. Indeed, Petitioner American Wild Horse Campaign ("AWHC") made this argument itself in its reply brief. ECF 62 at 24 ("Nothing in the Wild Horse Act directs BLM to create, eliminate, or adjust HMAs."). Nor does the Wild Horses Act speak directly to the question of whether BLM must, as Petitioners argue, retain HMAs that contain within their borders large quantities of private land when the private landowners have not given permission for the land to be used by wild horses. The Wild Horses Act also does not speak directly to how the Secretary should determine "appropriate management levels" of wild horses. *Wyoming v. United States Dep't of Interior*, 839 F.3d 938, 940 (10th Cir. 2016) ("The Act does not define the phrase 'appropriate management level.'"). Petitioners infer Congress's intent with respect to these provisions from other statements in the Wild Horses Act.[3] *See* ECF No. 74 at 3 (citing 16 U.S.C. § 1331, which is the Wild Horses Act's "findings and declaration of policy"). But this is hardly the "plain language" argument they claim to be making.

As explained in our response brief, the best reading of the Wild Horses Act is one that harmonizes both Section 3 and Section 4 and which allows BLM to comply with each of its statutory obligations. ECF No. 54 at 39-41. Petitioners' argument irrationally cabins the analysis to Section 3 of the Wild Horses Act, without providing any reconciliation between its interpretation of Section 3 and BLM's duties under Section 4. ECF No. 74 at 3-4. But *Loper Bright* reaffirmed that the courts should use traditional tools of statutory construction when

---

[3] Petitioners also, once again, argue that the Resource Management Plan Amendments challenged here were required to comply with the removal provisions in Section 3(b)(2) of the Wild Horses Act. ECF No. 74 at 2 & 3 (citing 16 U.S.C. § 1333(b)(2)). As explained in our response brief, BLM does not make a removal decision until the gather plan stage. ECF No. 54 at 46-47. At this time, a removal decision has not been made.

interpreting ambiguous statutes. 2024 WL 3208360, at *16. And one such tool, as set forth in Federal Defendants' response brief, is that courts must construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted). Petitioners' reading of Section 3 impermissibly renders Section 4 "nonsensical and superfluous." *Id*. Petitioners seek to sweep aside BLM's compliance with Section 4 as "administrative convenience," ECF No. 74 at 4, but this trivializes the very real obligations that BLM incurs under Section 4; namely to remove wild horses from private land upon request. 16 U.S.C. § 1334. BLM's interpretation is not one of "administrative convenience;" but one made to ensure that BLM is in compliance with all requirements of the Act. And the best reading of the statute is one that allows BLM to meaningfully comply with Section 4, while also meeting its Section 3 obligations. There is admittedly tension between Sections 3 and 4 of the Wild Horses Act, and that tension is only exacerbated by the checkerboard land pattern in Wyoming. With this unique land management pattern, combined with the statutory ambiguity, BLM's interpretation of the Wild Horses Act, *as a whole*, is undoubtedly the best reading.

In conclusion, while the Supreme Court's decision in *Loper Bright* is relevant to the standard of review for questions of statutory interpretation, it does not alter the Court's analysis of the parties' arguments. Federal Defendants did not request *Chevron* deference and its statutory interpretation arguments are fully consistent with the holding in *Loper Bright*.

Dated: July 12, 2024

Respectfully submitted,                                    TODD KIM
                                                           Assistant Attorney General

4

U.S. Department of Justice
Environment & Natural Resources Division
S. JAY GOVINDAN, Section Chief
Wildlife & Marine Resources Section
BRIDGET MCNEIL, Assistant Section
Chief

*/s/ Maggie Baker Smith*
MAGGIE BAKER SMITH, Trial Attorney
(WA Bar No. 42658)
Wildlife & Marine Resources Section
7600 Sand Point Way, NE
Seattle, Washington 98155
Telephone: 202-598-3088
Email: Maggie.Smith@usdoj.gov

*/s/ Kimberly A. Cullen*
KIMBERLY A. CULLEN
(DC Bar No. 888314618)
Trial Attorney, Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Telephone: 202-305-0503
Fax: 202-305-0275
Email: kimberly.cullen@usdoj.gov

ERIC J. HEIMANN
Acting United States Attorney

*/s/ C. Levi Martin*
C. LEVI MARTIN
Civil Chief
(WY Bar No. 6-3781)
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Email: christopher.martin@usdoj.gov

*Attorneys for Federal Respondents*